IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ROBERT W. DORN, | ) |
|       Plaintiff, | ) ) ) |
| v. | ) ) Case No. 23-cv-425-DES |
| LELAND DUDEK,[1] Acting Commissioner of the Social Security Administration, | ) ) ) ) ) |
|       Defendant. | ) ) |

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Robert W. Dorn ("Claimant") seeks judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") denying his claim for disability insurance benefits under Title II of the Social Security Act (the "Act"). For the reasons explained below, the Court AFFIRMS the Commissioner's decision denying benefits.

**I.      Statutory Framework and Standard of Review**

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be deemed disabled under the Act, a claimant's impairment(s) must be "of such severity that he is not only unable to do his previous work but

---

[1] Effective February 17, 2025, Leland Dudek, Acting Commissioner of Social Security, is substituted as the defendant in this action pursuant to Fed. R. Civ. P. 25(d). No further action is necessary to continue this suit by reason of 42 U.S.C. § 405(g).

cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520(a)(4). This process requires the Commissioner to consider: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a medically determinable severe impairment(s); (3) whether such impairment meets or medically equals a listed impairment set forth in 20 C.F.R. pt. 404, subpt. P., app. 1; (4) whether the claimant can perform his past relevant work considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"); and (5) whether the claimant can perform other work considering the RFC and certain vocational factors. 20 C.F.R. § 404.1520(a)(4)(i)-(v). Although the claimant bears the burden of proof through step four, the burden shifts to the Commissioner at step five. *Lax v. Astrue,* 489 F.3d 1080, 1084 (10th Cir. 2007). If it is determined, at any step of the process, that the claimant is or is not disabled, evaluation under a subsequent step is not necessary. *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir. 1988).

A district court's review of the Commissioner's final decision is governed by 42 U.S.C. § 405(g). The scope of judicial review under § 405(g) is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's factual findings are supported by substantial evidence. *See Noreja v. Soc. Sec. Comm'r,* 952 F.3d 1172, 1177 (10th Cir. 2020). Substantial evidence is more than a scintilla but means only "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938). In conducting its review, the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Noreja,* 952 F.3d at 1178 (quotation omitted). Rather, the Court must

"meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007) (quotation omitted).

## II.     Claimant's Background and Procedural History

On December 20, 2021, Claimant protectively applied for disability insurance benefits under Title II of the Act. (R. 17, 163-67). Claimant alleges he has been unable to work since January 30, 2021, due to diabetes, nerve damage, a pinched nerve in his back, eye problems, depression, and a learning delay. (R. 163, 189). Claimant was 54 years old on the date of the Administrative Law Judge's ("ALJ") decision. (R. 31, 163). He has a ninth-grade education and past work as a well service floor waxer and heavy equipment operator. (R. 54, 190).

Claimant's claim for benefits was denied initially and on reconsideration, therefore he requested a hearing. (R. 59-80, 96). ALJ James L. Bentley conducted an administrative hearing and issued a decision on May 30, 2023, finding Claimant not disabled. (R. 17-31, 36-58). The Appeals Council denied review on October 20, 2023 (R. 1-6), rendering the Commissioner's decision final. 20 C.F.R. § 404.981. Claimant filed this appeal on December 18, 2023. (Docket No. 2).

## III.    The ALJ's Decision

In his decision, the ALJ found Claimant met the insured requirements for Title II purposes through September 30, 2026. (R. 19). The ALJ then found at step one that Claimant had not engaged in substantial gainful activity since his alleged onset date of January 30, 2021. (*Id.*). At step two, the ALJ found Claimant had severe impairments of diabetes mellitus with neuropathy, degenerative disc disease, depression, and anxiety. (*Id.*). At step three, the ALJ found Claimant's impairments did not meet or equal a listed impairment. (R. 20-23).

Before proceeding to step four, the ALJ determined Plaintiff had the RFC to perform a range of light work as defined in 20 C.F.R. § 404.1567(b) with the following non-exertional limitations:

> [H]e can occasionally climb ramps and stairs but is unable to climb ladders and scaffolding. The claimant must avoid unprotected heights and dangerous moving machinery. The claimant is able to understand, remember, and apply[ ] simple multi-step instructions, make simple work-related decisions, and concentrate and persist for extended periods in order to complete simple multi-step work tasks with routine supervision. He is able to interact with and respond appropriately to others in a routine work setting. He is able to adapt to a routine work setting where changes are infrequent, well explained, and introduced gradually. The claimant is able to recognize and avoid normal workplace hazards.

(R. 23). The ALJ provided a summary of the evidence that went into this finding. (R. 23-29).

At step four, the ALJ concluded that Claimant could not return to his past relevant work. (R. 29). Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Claimant could perform other work existing in significant numbers in the national economy, including sales attendant, fountain server, and collator operator. (R. 30). Accordingly, the ALJ concluded Claimant was not disabled. (R. 31).

## IV. Issues Presented

Claimant asserts the ALJ erred by: (1) failing to properly evaluate the opinions of state agency psychological consultants Dr. Ryan Scott and Dr. Brian Snider regarding Claimant's ability to interact with the general public (Docket No. 12 at 7-8, Docket No. 19 at 1-3); and (2) failing to properly evaluate his subjective symptoms (Docket No. 12 at 9-11, Docket No. 19 at 3-4). The Court finds no reversible error in the ALJ's decision.

V.     Analysis

   A.     ALJ Properly Evaluated the Opinions of Dr. Scott and Dr. Snider

For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. § 404.1520c. A "medical opinion" is a statement from a medical source about what a claimant "can still do despite [his] impairment(s) and whether [he has] one or more impairment-related limitations or restrictions" in four work-related abilities. 20 C.F.R. § 404.1513(a)(2). These abilities include the "ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting[.]" 20 C.F.R. § 404.1513(a)(2)(ii). If the record contains a medical opinion, the ALJ must consider and address it in the RFC assessment, and, if the RFC conflicts with the opinion, the ALJ "must explain why the opinion was not adopted." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The ALJ does not "defer or give any specific evidentiary weight . . . to any medical opinion(s) . . . ." 20 C.F.R. § 404.1520c(a). Instead, the ALJ evaluates the "persuasiveness" of medical opinions by considering five factors: (1) supportability; (2) consistency; (3) relationship with the claimant (including length, purpose, and extent of treatment relationship, frequency of examinations, and examining relationship); (4) specialization; and (5) other factors that tend to support or contradict the opinion or finding. 20 C.F.R. § 404.1520c(a), (c). Supportability and consistency are the most important factors, and the ALJ must always explain how he considered those factors in the decision.[2] 20 C.F.R.

---

[2] Supportability refers to the relevancy of "the objective medical evidence and supporting explanations presented by a medical source" to support his medical opinion.  20 C.F.R. § 404.1520c(c)(1).  Consistency refers to the consistency of a medical source opinion "with the evidence from other medical sources and nonmedical sources" in the record. 20 C.F.R. § 404.1520c(c)(2).

§ 404.1520c(b)(2). The ALJ is not required to articulate findings on the remaining factors unless there are two or more medical opinions about the same issue that are equally well-supported and consistent with the record, but not identical. 20 C.F.R. § 404.1520c(b)(2), (3).

As relevant to this appeal, state agency psychologist Dr. Ryan Scott completed a mental RFC assessment on July 13, 2022, wherein he found Claimant was moderately limited in his ability to interact appropriately with the general public. (R. 64-65). Dr. Scott then concluded that Claimant could only tolerate incidental/occasional public contact. (R. 65).

Similarly, on November 29, 2022, state agency psychologist Dr. Brian Snider completed a mental RFC assessment and found Claimant was markedly limited in his ability to interact appropriately with the general public. (R. 77). Dr. Snider then concluded that Claimant was unable to tolerate frequent contact with the public. (R. 78).

In discussing the medical source opinion evidence, the ALJ concluded that the opinions of Drs. Scott and Snider were of "limited persuasiveness." (R. 28). Specifically, the ALJ rejected the social functioning limitations Drs. Scott and Snider identified, explaining that to the extent their findings were more restrictive than the RFC, such findings were inconsistent with the following: (1) Claimant's lack of regular mental health counseling; (2) Claimant's ability to go out alone, shop in stores, and drive; (3) Dr. Paris's consultative examination observations that Claimant was cooperative, had good verbal skills, and appropriate eye contact; and (4) nurse Carissa Patrick's ("Ms. Patrick") normal mental status examinations in December 2021, May 2022, July 2022, and November 2022. (R. 27-28).

Claimant asserts the ALJ "points to zero medical evidence in support of excluding the public contact limitation in the Claimant's RFC." (Docket No. 12 at 7). Claimant's argument is belied by the record. As set forth above, the ALJ provided numerous reasons, supported by the

6

record, for rejecting the public interaction limitations identified by Drs. Scott and Snider, and instead concluding that Claimant had no public interaction limitations.

Claimant further asserts the ALJ discussed only portions of Drs. Scott and Snider's opinions, without explaining why he rejected the medical evidence that supported their public interaction limitations. It is well-established that an ALJ may not "pick and choose among medical reports, using portions of evidence favorable to h[is] position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004). This rule follows from the broader directive that "in addition to discussing the evidence supporting his decision, the ALJ must also discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). However, the ALJ is not required to discuss each piece of evidence in the record in detail. *See id.* at 1009-10. ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."). Notably, Claimant points to no evidence the ALJ failed to consider, thus his arguments amount to a request that the Court reweigh the evidence, which it cannot do. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005) ("We consider whether the ALJ followed the 'specific rules of law that must be followed in weighing particular types of evidence in disability cases,' but we will not reweigh the evidence or substitute our judgment for the Commissioner's." (citations omitted)).

**B.     ALJ Properly Evaluated the Consistency of Claimant's Subjective Symptoms**

Claimant next contends the ALJ erred in evaluating his subjective symptoms, specifically arguing the ALJ failed to offer a sufficient discussion or justification for discounting his symptoms related to standing.

The ALJ is required to consider Claimant's subjective complaints, or symptoms[3] in determining the RFC.  20 C.F.R. § 404.1529(a) & (d)(4). The Commissioner uses a two-step process when evaluating a claimant's symptoms.[4] SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017); *see also* 20 C.F.R. § 404.1529.  First, the medical signs or laboratory findings must show the existence of medical impairment(s) that result from anatomical, physiological, or psychological abnormalities and could reasonably be expected to produce the symptoms alleged.  SSR 16-3p at *3.  Second, once such impairments are established, the ALJ must then evaluate the intensity and persistence of the symptoms, so he can determine how the symptoms limit the claimant's ability to work.  *Id.* at *4.

Factors the ALJ should consider as part of the symptom evaluation include: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of medications; (5) treatment aside from medication; (6) any other measures the claimant has used to relieve symptoms; and (7) other factors concerning functional limitations and restrictions due to the symptoms.  *Id.* at *7-8.  The ALJ's consistency findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  *Cowan v. Astrue,* 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995). The ALJ's decision "must contain specific reasons for the weight given to the individual's

---

[3] Symptoms mean a claimant's "own description of [his] physical or mental impairment." 20 C.F.R. § 404.1502(i).

[4] Tenth Circuit precedent characterizes this as a three-step process: (1) whether the claimant established a symptom-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some symptom of the sort alleged (a "loose nexus"); and (3) if so, whether, considering all objective and subjective evidence, the claimant's symptom was in fact disabling. *See Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna v. Bowen,* 834 F.2d 161, 163-64 (10th Cir. 1987)).  The two-step analysis under SSR 16-3p comports with this prior, three-step process under *Luna*.  *Paulek v. Colvin,* 662 F. App'x 593-94 (10th Cir. 2016) (unpublished).  However, the term "credibility" is no longer used.  SSR 16-3p at *2.  For purposes of this opinion, the Court will refer to the process as a "consistency analysis."

symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p at *10. Because consistency findings are "peculiarly the province of the finder of fact," reviewing courts should "not upset such determination when supported by substantial evidence." *Cowan,* 552 F.3d at 1190 (quoting *Kepler,* 683 F.3d at 391).

The Court finds no error in the ALJ's consistency analysis. The ALJ summarized Claimant's subjective symptoms and limitations in his decision. (R. 22-23). He specifically acknowledged Claimant's allegations that he experiences extremity numbness, has trouble standing on his feet, and can only stand for ten-to-twenty minutes at a time. (R. 23). The ALJ then found Claimant's statements regarding the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical and other evidence in the record. (R. 24). In reaching this conclusion, the ALJ discussed numerous inconsistencies between Claimant's subjective complaints and the evidence of record, including: (1) the lack of specialized treatment for Claimant's impairments such as surgery, physical therapy, nerve conduction studies, or hospitalization; (2) Claimant's ability to care for himself, walk without restrictions, live alone, do household chores, prepare meals, care for pets, drive, and shop; (3) the lack of medical care between Claimant's alleged onset date and December 2021; (4) Claimant's normal physical examinations in December 2021; (5) Ms. Patrick's physical examinations in January, February, March, May, July, August, and November 2022, showing a normal gait and station; (6) Claimant's normal gait and posture at his June 2022 consultative mental status examination with Dr. Paris; and (7) Claimant's ability to ambulate without the use of an assistive device. (R. 24-25). The Court finds ALJ linked his consistency findings to the evidence and provided clear and specific reasons for his determination in compliance with the directives of *Kepler* and its progeny, SSR 16-3p, and

the regulations. Claimant simply disagrees with the ALJ's interpretation of the evidence. However, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Cowan,* 552 F.3d at 1185 (10th Cir. 2008). Moreover, even if the evidence could support a different finding, the Court cannot "displace the agency's choice between two fairly conflicting views . . . ." *Id.* Claimant's arguments again amount to a request that the Court reweigh the evidence and interpret it in her favor, which the Court cannot do. *Hackett,* 395 F.3d at 1172.

Claimant further asserts the ALJ improperly discounted his symptoms based on his failure to seek specialized medical care without considering the effect his lack of insurance had on his ability to obtain further treatment. Although the ALJ's use of this reasoning is questionable, the decision makes clear that the ALJ did not base his entire consistency analysis on Claimant's failure to seek medical care. As set forth above, the ALJ provided numerous <u>other</u> reasons supported by the record to discount Claimant's subjective symptoms, which Claimant does not challenge, and the balance of the consistency analysis is thus supported by substantial evidence. *See, e.g., Branum v. Barnhart,* 385 F.3d 1268, 1274 (10th Cir. 2004) ("While we have some concerns regarding the ALJ's reliance on plaintiff's alleged failure to follow a weight loss program and her performance of certain minimal household chores, we conclude that the balance of the ALJ's [consistency] analysis is supported by substantial evidence in the record.").

## VI.  Conclusion

For the foregoing reasons, the Commissioner's decision finding Claimant not disabled is AFFIRMED.

SO ORDERED this 31st day of March, 2025.

_____
D. EDWARD SNOW
UNITED STATES MAGISTRATE JUDGE